[Cite as *State v. Magnone*, 2016-Ohio-7100.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2015-CA-94 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-150 |
| | : | |
| CHAD MAGNONE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of September, 2016.

. . . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Clark County Prosecuting Attorney, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020, NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, P.O. Box 10126, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Chad Magnone, appeals from his conviction in the Clark County Court of Common Pleas after pleading no contest to two counts of Pandering Sexually-Oriented Matter Involving a Minor and two counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance. Specifically, Magnone challenges the trial court's decision overruling his motion to suppress statements he made during an interview with detectives in which he admitted to downloading and saving child pornography onto his computer. Magnone also argues that the trial court erred in accepting his no contest plea to the pandering charges and in finding him guilty of those charges. Magnone further claims the definition of "nudity," as that term is used in the illegal use statute, R.C. 2907.323(A)(3), is unconstitutionally vague. Lastly, Magnone contends in a supplemental assignment of error that his conviction and sentence for the two counts of illegal use should be reversed on grounds that he was improperly advised at the plea hearing that those offenses were felonies of the fourth degree and was improperly sentenced for that offense level when the illegal use offenses were actually felonies of the fifth degree. For the reasons outlined below, the judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

**Facts and Course of Proceedings**

{¶ 2} On March 23, 2015, the Clark County Grand Jury returned a 20-count indictment charging Magnone with multiple counts of Pandering Obscenity Involving a Minor, Pandering Sexually-Oriented Matter Involving a Minor, and Illegal Use of a Minor

in Nudity-Oriented Material or Performance. Magnone initially pled not guilty to the charges and then filed a motion to suppress. In his motion, Magnone sought to suppress statements he made to detectives in which he admitted to downloading and saving child pornography onto his computer. Magnone argued that his statements should be suppressed because they were made during a custodial interrogation without *Miranda* warnings.

**{¶ 3}** On July 17, 2015, the trial court held a hearing on Magnone's motion to suppress. At the hearing, the trial court heard testimony from both Magnone and Detective Sandra Fent of the Springfield Police Department. Their testimony indicated that on December 16, 2014, Magnone's girlfriend found child pornography on Magnone's computer and brought a copy of it to the police department. After interviewing Magnone's girlfriend and reviewing the material, Detective Fent executed a search warrant at Magnone's home and took possession of his computer, which was later sent away for a forensic examination.

**{¶ 4}** Following the search, Detective Fent and her partner, Detective Pergram, made contact with Magnone at the post office in Enon, Ohio, where Magnone worked as postmaster. Detective Fent testified that Magnone voluntarily agreed to speak with her and Detective Pergram about his computer and, due to privacy concerns, opted to discuss the matter with them at a nearby police station. In addition, Detective Fent testified that she made it clear to Magnone that he would be returned to work following the interview. Magnone testified that he agreed to speak with the detectives, but that he did not recall whether he was given an option to have the interview somewhere other than the police station. He did, however, recall Detective Fent telling him he would be taken back to

work after the interview.

{¶ 5} Both Detective Fent and Magnone testified that Magnone was transported to the police station in a police cruiser and was patted down before entering the cruiser. The cruiser was driven by a third officer, Lieutenant Holler, who also conducted the pat-down search. Detective Fent testified that Lieutenant Holler arrived after the detectives contacted the Enon Police Department as a courtesy to let the department know that the detectives were going to be in its jurisdiction.

{¶ 6} Magnone testified that upon arriving at the police station, he was taken to a small interview room. He claimed that during the interview, Detective Pergram was positioned in front of the room's door, which made him feel as though he could not leave. Magnone also testified that Detective Fent took his cell phone and told him that, based on his statements, he was subject to felony charges. Magnone further claimed that he was never told that he could leave the interview and believed that he was in custody.

{¶ 7} The State presented a video recording of the interview as State's Exhibit No. 1 and played it for the trial court at the suppression hearing. The interview was approximately 24 minutes long and showed a relaxed, casual conversation between Magnone and the detectives. The video confirmed Detective Fent's testimony that she ensured the interview-room door was unlocked and that Magnone was never handcuffed or placed under arrest on the day of the interview. Indeed, Magnone was returned to the post office after the interview and was not arrested until March 25, 2015, three months after the interview took place.

{¶ 8} As to the substance of the video, five minutes into the interview, Detective Fent asked Magnone: "Is there anything on your computer that's questionable as to

photographs, videos, um, any downloads or anything?" In response, Magnone admitted to opening up pornographic webpages "that looked like there was young people in them." Magnone estimated that the "young people" were probably 12 to 14 years of age, but later admitted that some were possibly as young as 7 years old. Magnone told the detectives that he deleted some, but not all of the child pornography from his computer, and indicated that he had saved more than 50 pictures or videos.

{¶ 9} After Magnone's admission, Detective Fent asked Magnone if he had a cell phone. Upon learning that he had a cell phone, Detective Fent said "we're going to need to take that." Detective Fent then provided Magnone with a consent form allowing the detectives to search his phone, which Magnone read and signed. Thereafter, Magnone asked the detectives about the possible charges and punishment. Detective Fent responded that, based on his statements, he could be subject to anywhere between a second and fourth-degree felony. She also told Magnone that she did not know what the punishment would be, as it depended on what was found on his computer and whether he had a criminal record.

{¶ 10} Following the suppression hearing, the trial court issued a written decision overruling Magnone's motion to suppress on grounds that he was not subject to a custodial interrogation that required *Miranda* warnings. After the trial court denied the motion, Magnone negotiated a plea agreement with the State and pled no contest to two second-degree-felony counts of Pandering Sexually-Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(1) and two fourth-degree-felony counts of Illegal Use of a Minor in Nudity-Oriented Material in violation of R.C. 2907.323(A)(3). At sentencing, the trial court classified Magnone as a Tier II Sex Offender and sentenced him to serve 6

years in prison on both pandering counts and 18 months in prison on both illegal-use counts, with all counts to be served concurrently for a total term of 6 years in prison.

{¶ 11} Magnone subsequently appealed from his conviction and filed an appellate brief raising three assignments of error for this court's review. The matter then proceeded to oral argument where Magnone presented an issue not raised in his brief. We permitted the parties to submit briefs on the new issue, which Magnone designated as a supplemental assignment of error. For purposes of clarity, we will begin our review with Magnone's supplemental assignment of error.

**Supplemental Assignment of Error**

{¶ 12} Magnone's Supplemental Assignment of Error is as follows:

MR. MAGNONE'S CONVICTIONS AND SENTENCES FOR ILLEGAL USE OF A MINOR IN NUDITY-ORIENTED MATERIAL WERE IMPROPER AS THE OFFENSES WERE FELONIES OF THE FIFTH DEGREE, NOT FELONIES OF THE FOURTH DEGREE.

{¶ 13} Under his Supplemental Assignment of Error, Magnone contends that his conviction and sentence for the two counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance in violation of R.C. 2907.323(A)(3) should be reversed on grounds that he was improperly advised at the plea hearing that those offenses were felonies of the fourth degree, and, after pleading no contest, was improperly sentenced for that offense level when the offenses were actually felonies of the fifth degree. Magnone also contends that his trial counsel was ineffective for allowing him to plead no contest to the higher offense level.

{¶ 14} R.C. 2907.323(B) provides the penalties for offenses under that statute and states as follows:

> Whoever violates this section is guilty of illegal use of a minor in a nudity-oriented material or performance. * * * *Except as otherwise provided in this division, whoever violates division (A)(3) of this section is guilty of a felony of the fifth degree. If the offender previously has been convicted of or pleaded guilty to a violation of this section or section 2907.321 or 2907.322 of the Revised Code, illegal use of a minor in a nudity-oriented material or performance in violation of division (A)(3) of this section is a felony of the fourth degree. * * **

(Emphasis added.)

{¶ 15} From the foregoing statute, it is clear that a violation of R.C. 2907.323(A)(3) is a felony of the fifth degree unless the defendant has a prior conviction for a child pornography charge. The State concedes that Magnone does not have a prior conviction for a child pornography charge and agrees that his conviction and sentence for the two illegal use counts should be reversed and remanded for a new hearing on those charges.

{¶ 16} We agree with the parties and find that Magnone was improperly convicted and sentenced for two fourth-degree felony counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance, as it is clear that the offenses are felonies of the fifth degree. We therefore need not address Magnone's ineffective assistance claim as it is now rendered moot.

{¶ 17} Magnone's Supplemental Assignment of Error is sustained.

**First Assignment of Error**

{¶ 18} Magnone's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN OVERRULING MAGNONE'S MOTION TO

SUPPRESS BECAUSE HE WAS IN CUSTODY WHEN INTERROGATED

AT THE POLICE STATION, REQUIRING *MIRANDA* WARNINGS.

{¶ 19} Under his First Assignment of Error, Magnone contends the trial court erred in failing to suppress the statements he made to the detectives at the police station. Magnone maintains that at the time he was questioned by the detectives, he was subject to a custodial interrogation that required *Miranda* warnings. He claims that because the detectives failed to Mirandize him, his statements are inadmissible and should have been suppressed. We disagree.

{¶ 20} When reviewing a trial court's ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.,* citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). Thus, "[i]n reviewing the trial court's ruling on a motion to suppress evidence, this court is governed by the de novo standard of review and must accept the findings of fact made by the trial court if they are supported by competent, credible evidence." (Citation omitted.) *State v. Johnson*, 2d Dist. Montgomery No. 23693, 2010-Ohio-6224,

¶ 10.

{¶ 21} "The right to [*Miranda*] warnings is grounded in the Fifth Amendment's prohibition against compelled self-incrimination." *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 16 (2d Dist.), citing *Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "The procedural safeguards prescribed by *Miranda* apply only when persons are subjected to 'custodial interrogation.' " *State v. Thomas*, 2d Dist. Montgomery No. 20643, 2005-Ohio-3064, ¶ 27, citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). " 'Custodial interrogation' means questioning initiated by the police after the person has been taken into custody or otherwise deprived of his freedom to the degree associated with a formal arrest." (Citations omitted.) *State v. Vineyard*, 2d Dist. Montgomery No. 25854, 2014-Ohio-3846, ¶ 32.

{¶ 22} "In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave." *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 27, citing *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). Therefore, "the test for custody is an objective test." *State v. Chenoweth*, 2d Dist. Miami No. 2010 CA 14, 2011-Ohio-1276, ¶ 8, citing *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). "The subjective views of the interviewing officer and the suspect are immaterial to the determination of whether a custodial interrogation was conducted." (Citations omitted.) *State v. Earnest*, 2d Dist.

Montgomery No. 26646, 2015-Ohio-3913, ¶ 22. *Accord State v. Gray*, 2d Dist. Montgomery No. 26139, 2016-Ohio-1419, ¶ 74.

{¶ 23} "The factors a court should consider in applying this reasonable person test include whether the encounter takes place in surroundings that are familiar to the suspect; the number of law enforcement officers present, as well as their conduct and demeanor; the degree of physical restraint imposed; and the duration and character of the interrogation." (Citation omitted.) *State v. Farrell*, 2d Dist. Miami No. 99-CA-24, 1999 WL 812249, *3 (Oct. 8, 1999). The following are some other more specific factors that this court has considered:

1) What was the location where the questioning took place—i.e., was the defendant comfortable and in a place a person would normally feel free to leave? For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;

2) Was the defendant a suspect at the time the interview began * * *;

3) Was the defendant's freedom to leave restricted in any way;

4) Was the defendant handcuffed or told he was under arrest;

5) Were threats * * * made during the interrogation;

6) Was the defendant physically intimidated during the interrogation;

7) Did the police verbally dominate the interrogation;

8) What was the defendant's purpose for being at the place where questioning took place? * * *;

9) Were neutral parties present at any point during the questioning;

10) Did police take any action to overpower, trick, or coerce the defendant

into making a statement.

(Citations omitted.) *State v. Estepp*, 2d Dist. Montgomery No. 16279, 1997 WL 736501, *4 (Nov. 26, 1997).

**{¶ 24}** In *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the United States Supreme Court found no custodial interrogation where the defendant voluntarily came to the police station in response to a detective leaving his card at the defendant's apartment. *Id.* at 493-495. The defendant initially called the detective and the detective asked the defendant where it would be convenient for them to meet. *Id.* at 493. After the defendant indicated that he had no preference, the detective suggested that they meet at the police station, to which the defendant agreed. *Id.* The officer subsequently interviewed the defendant at the police station in a closed office for half an hour, telling him at the outset that he was not under arrest. *Id.* Once the interview was over, the defendant left the station. *Id.*

**{¶ 25}** The court in *Mathiason* stated that:

In the present case, * * * there is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a 1/2-hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that *Mathiason* was not in custody "or otherwise deprived of his freedom of action in any significant way."

*Id.* at 495.

**{¶ 26}** In addition, the court explained that:

Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Id.*

{¶ 27} In *State v. Bowman*, 2d Dist. Montgomery No. 18176, 2001 WL 43099, (Jan. 19, 2001), we found no custodial interrogation where two detectives first questioned the defendant at his apartment in the presence of his girlfriend and then asked the defendant if he would accompany them to the police department for further questioning. *Id.* at *5. The defendant testified that when the detectives asked him to come down to the station, he said, "I am going to get my shirt. Tell [my girlfriend] I will be back." *Id.* The defendant further said that the detectives repeatedly told him they would bring him back in a couple

of hours. *Id.* The record was devoid of any evidence that the defendant was prevented from leaving the police station once he arrived. *Id.* Based on these facts, we held that a reasonable person in the defendant's position would not have believed he was under arrest or under restraint of freedom of the degree "associated with a formal arrest" at the time he was interviewed by the detectives. *Id.*

{¶ 28} In *State v. Stahl*, 2d Dist. Greene No. 2004-CA-69, 2005-Ohio-2239, we found no custodial interrogation where the defendant voluntarily appeared at the Xenia police station to meet with a detective to discuss the molestation of his five-year-old niece. *Id.* at ¶ 7-9. At the time of the interview, the defendant had not been arrested and police still were investigating the case. *Id.* at ¶ 9. Nothing in the record suggested that the detective prevented the defendant from leaving the interview room or in any way restricted his freedom of movement. *Id.* The defendant also returned home after speaking with the detective. *Id.* In light of these facts, we found the record devoid of any facts from which we reasonably could conclude that the defendant was in custody for purposes of *Miranda*. *Id.*

{¶ 29} In this case, Magnone argues that he was subject to a custodial interrogation requiring *Miranda* warnings because he was: (1) confronted by detectives at his place of employment; (2) questioned at a police station; (3) transported to the police station in a police cruiser; (4) patted down before entering the cruiser; (5) taken to a small interview room and positioned in a manner that prevented him from leaving the room; and (6) never told he was free to leave the interview. Magnone also argues that after he admitted to downloading the offending photos, the detectives took his cell phone and advised him that, based upon his statements, he faced felony charges. As a result of

these circumstances, Magnone claims he did not feel free to terminate the interview and leave, and contends that a reasonable person in his situation would feel the same.

**{¶ 30}** In overruling Magnone's motion to suppress, the trial court found that Magnone voluntarily chose to be questioned at the police station for purposes of discussing the issue of child pornography in private, as opposed to at the post office where he worked. In addition, the court found that Magnone was never placed in handcuffs, was never arrested or otherwise detained, and was free to leave at any time. Moreover, the court found that, prior to questioning Magnone, Detective Fent promised to return Magnone to the post office and then fulfilled that promise once the interview was over.

**{¶ 31}** The aforementioned findings of fact made by the trial court are supported by competent, credible evidence in the record. Specifically, during the suppression hearing, Magnone testified that he agreed to speak to the detectives about material on his computer when they made contact with him at the post office. Detective Fent testified that when she spoke with Magnone at the post office, she gave him the option to speak there or at the police station and Magnone chose the police station for a more private setting. Detective Fent also testified that she advised Magnone that the questioning would not take long and that he would be returned to work after the interview. Magnone further testified that when he agreed to speak with the detectives, the detectives gave him a few minutes to finish up his work at the post office before leaving for the police station.

**{¶ 32}** While Detective Fent testified that she did not expressly tell Magnone that he was free to leave the interview, she claimed that during the interview she reiterated her promise to return him to work. The video of the interview confirmed Detective Fent's

testimony, as well as Magnone's testimony that he never asked to leave the interview and never told the detectives that he did not want to speak with them. The video also confirmed Detective Fent's testimony that Magnone was not handcuffed or arrested during the interview. Rather, the record indicates that Magnone was not arrested until March 25, 2015, three months after the interview took place. In addition, both Detective Fent and Magnone testified that the detectives indeed returned him to the post office after the interview was finished.

{¶ 33} The trial court did not make a finding with regard to Magnone's transportation to the police station. However, we do not find that the circumstances surrounding his transportation would lead a reasonable person in Magnone's position to believe that he or she was in custody. Magnone testified that he had originally planned on driving himself to the police station, but when he saw that the detectives were waiting for him in the front lobby of the post office, he chose to meet them in the lobby instead of going out the back entrance to his car. From there, Magnone testified that he was transported three blocks to the police station in a police cruiser and was patted down before entering the cruiser. Detective Fent testified that it was conveyed to Magnone that the pat down was merely for officer safety. Magnone also testified that he never asked to drive himself to the police station. Accordingly, the facts indicate that Magnone voluntarily entered the cruiser for transportation to the police station and was subject to a routine pat down as a result.

{¶ 34} The trial court also did not make a finding with respect to Magnone's claim that he was questioned in a small interview room and positioned in a manner that prevented him from leaving the room. Magnone testified that Detective Pergram was

"where the door was at" and that he "wouldn't feel comfortable getting up and trying to squeeze by her with the handle being right behind her head basically." Suppression Hearing Trans. (July 17, 2015), p. 24. The video of the interview, however, does not show that anyone was blocking the door to the interview room. Although the interview room was small, the video shows that there was at least two or three feet of space between Detective Pergram and the doorway. We also note that Detective Fent ensured the interview-room door was unlocked.

{¶ 35} Regardless, Magnone's subjective discomfort does not render him in custody. The fact remains that Magnone was not physically restrained during the interview and was never told that he could not leave the interview room. Magnone also never attempted to excuse himself from the interview room and was not blocked from leaving the room as he claimed. Under these circumstances, we do not find that Detective Pergram's positioning and the size of the interview room would have signaled to a reasonable person in Magnone's position that he or she was not free to terminate the interview and leave the room.

{¶ 36} With respect to Magnone's claim that he was in custody because Detective Fent took his cell phone and told him he faced felony charges, we note that the video shows these acts took place well after Magnone made the incriminating statements he wants suppressed. Furthermore, Detective Fent told Magnone that his cell phone would be returned to him at his residence later that evening. While Magnone's cell phone was actually returned to him the following day at the post office, Detective Fent's promise to return the cell phone to his residence would lead a reasonable person in Magnone's position to believe that he or she was free to leave and not in custody.

**{¶ 37}** We further note that the two case examples Magnone cites in support of his claim that he was in custody, *In re T.F.*, 9th Dist. Lorain No. 08CA009449, 2009-Ohio-3141 and *State v. Robinson*, 98 Ohio App.3d 560, 649 N.E.2d 18 (8th Dist.1994), are not binding on this court and are distinguishable. Unlike Magnone, the defendant in *In re T.F.* was only 12 years old and did not voluntarily go to the police station for questioning. *In re T.F.* at ¶ 13. Although the defendant in *Robinson* did voluntarily go to the police station to speak with detectives, there is no indication that the defendant was given a choice to speak somewhere other than the police station like Magnone was here. *Robinson* at 563-564.

**{¶ 38}** Based on the foregoing, we conclude that Magnone was not subject to a custodial interrogation at the time he made his incriminating statements. Magnone voluntarily agreed to be questioned by the detectives, chose to have the interview conducted at the police station, and did not object to being transported in a police cruiser. Magnone never asked to drive himself to the police station and was subject to a pat down merely as a routine procedure for officer safety. Magnone was not handcuffed, arrested, or otherwise physically detained by the detectives during the entire encounter. Most importantly, prior to being questioned, Detective Fent told Magnone that he would be returned to the post office after the interview and he was returned as promised. In telling Magnone this, Detective Fent implicitly advised Magnone at the inception of their encounter that he was not under arrest, which is analogous to *Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714.

**{¶ 39}** In addition, the video establishes that Magnone voluntarily admitted to downloading child pornography during the first five minutes of the interview after Detective

Fent merely asked: "Is there anything on your computer that's questionable as to photographs, videos, um, any downloads or anything?" The detectives did not coerce, threaten, intimidate, or trick Magnone into making this admission. While there were two detectives in the interview room with Magnone, which could be considered by some to be somewhat coercive, the interview was only 24 minutes long and was relaxed and friendly throughout.

{¶ 40} Under the totality of the circumstances, a reasonable person in Magnone's position would not have believed that he or she was not free to terminate the interview and leave. Therefore, we find that Magnone was not subject to a custodial interrogation and that *Miranda* warnings were not required for his statements to be admissible. Accordingly, the trial court did not err in overruling Magnone's motion to suppress.

{¶ 41} Magnone's First Assignment of Error is overruled

## Second Assignment of Error

{¶ 42} Magnone's Second Assignment of Error is as follows:

EVIDENCE THAT MAGNONE MERELY POSSESSED IMAGES DOES NOT SUSTAIN A CONVICTION UNDER R.C. 2907.322(A)(1), WHICH REQUIRES ADDITIONAL ACTION BY THE OFFENDER, AND THEREFORE THE PLEA SHOULD NOT HAVE BEEN ACCEPTED.

{¶ 43} Under his Second Assignment of Error, Magnone challenges his conviction for two counts of Pandering Sexually-Oriented Matter Involving a Minor in violation of R.C. 2907.322(A)(1). That statute provides that "[n]o person, with knowledge of the character of the material or performance involved, shall * * * [c]reate, record, photograph, film,

develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]"

**{¶ 44}** Magnone contends that at the plea hearing the State merely alleged that he "possessed" the prohibited material in R.C. 2907.322(A)(1) as opposed to creating, recording, photographing, filming, developing, reproducing or publishing it. Magnone is under the impression that pursuant to R.C. 2937.07, the State was required to present the trial court with an explanation of the circumstances surrounding the charges sufficient to support his conviction. Accordingly, he claims that because the State failed to establish an element of the offense necessary to support the conviction at the plea hearing, the trial court erred in accepting the no contest plea and in finding him guilty. We again disagree.

**{¶ 45}** The statute Magnone relies on, R.C. 2937.07, governs the action on guilty and no contest pleas in cases involving misdemeanors. "The requirements regarding no contest pleas in misdemeanor cases are different than the rules in felony cases." *State v. Adams*, 2d Dist. Montgomery No. 22493, 2009-Ohio-2056, ¶ 14. In misdemeanor cases, R.C. 2937.07 requires the trial court "to hear an explanation of the circumstances surrounding the offense and then determine whether the facts are sufficient to convict on a misdemeanor offense following a no contest plea." *Id.* "In a felony case, however, Crim.R. 11 permits a plea of no contest to a criminal charge, and does not require an explanation of the circumstances. Instead, the rule permits the court to enter judgment only based upon the facts as alleged in the indictment." *Id.* Specifically, the Supreme Court of Ohio has stated that "where the indictment, information, or complaint contains sufficient allegations to state a felony offense and the defendant pleads no contest, the

court must find the defendant guilty of the charged offense."   *State v. Bird*, 81 Ohio St.3d 582, 692 N.E.2d 1013 (1998), syllabus.   *Accord State v. Woolridge*, 2d Dist. Montgomery No. 18086, 2000 WL 1475699, *2 (Oct. 6, 2000).

**{¶ 46}** "Under [Crim.R. 11(B)(2)], a no contest plea, while not admitting guilt, admits the truth of the facts alleged in the indictment, information or complaint."   *Id.* "[S]ince in a no contest plea the defendant is admitting the truth of the facts as presented in the charging document, the state need not deliver a statement of facts."   *Id.*, citing Crim.R. 11(B)(2) and *State v. Bowsher*, 116 Ohio App.3d 170, 172, 687 N.E.2d 316 (6th Dist.1996).   Moreover, the Supreme Court of Ohio has held that "a statement of facts by a prosecutor does not constitute evidence."   (Citations omitted.)   *State v. Green*, 81 Ohio St.3d 100, 104, 689 N.E.2d 556 (1998).   *Accord Woolridge* at *2.

**{¶ 47}** "However, where the prosecutor presents a statement of facts and it ' "not only fail[s] to include, but absolutely negative[s] the existence of, an essential element of the offense charged in the indictment," ' then the trial court errs by convicting the defendant on his no contest plea to the charge."   *Woolridge* at *2, quoting *State v. Edward Joseph Lowe, M.D., Inc.,* 2d Dist. Miami Nos. 93-CA-54, 93-CA-55, 1995 WL 127890 (Mar. 24, 1995), quoting *State v. Cohen*, 60 Ohio App.2d 182, 184, 396 N.E.2d 235 (1st Dist.1978).   "Thus, although the omission of a fundamental fact is permissible, the trial court may not find a defendant guilty based on his no contest plea if the state's statement of facts absolutely negates the existence of an essential element of the offense."   (Emphasis omitted.)   *Id.*, citing *Lowe.*   *Accord State v. Beddow*, 2d Dist. Montgomery No. 18957, 2002 WL 252478, *2 (Feb. 22, 2002) ("[e]ven though an essential element of an offense is alleged in the indictment to which the defendant pleads no

contest, it may, nevertheless, constitute an abuse of discretion for the trial court to accept a plea of no contest to that offense when a recitation by the prosecutor, at the plea hearing, of the facts of the offense "absolutely negates an essential element of the offense' ").

{¶ 48} In this case, the indictment charging Magnone alleged the following with respect to the two counts of pandering at issue:

> That as a continuous course of conduct from on or about September 3, 2014 to on or about December 15, 2014,  * * * CHAD R. MAGNONE * * *, knowing the character of the material, did create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality in violation of Section 2907.322(A)(1) of the Ohio Revised Code[.]

Indictment (Mar. 23, 2015), Clark County Court of Common Pleas Case No. 15 CR 0150, Docket No. 1, p. 2-3.

{¶ 49} The prosecutor also recited the following at the plea hearing:

> The facts to which the defendant is entering a plea of no contest are that as a continuous course of conduct from on or about September the 3rd 2014, to on or about December 15, 2014, in Clark County, Ohio, Chad Magnone did knowingly knowing the character of the material did create, reproduce, or publish—excuse me, did knowing with knowledge of the character of the material or performance involved did create, record, photograph, film, any material that shows a minor participating or engaging in sexual activity, masturbation or bestiality.

If this matter had gone to trial, the State would have proven that Magnone possessed approximately thirty-five (35) images containing sexually oriented material involving a minor. That relates to count eight and count eleven.

* * *

The State provided specific file names related to each of the counts. With respect to count eight image 01(2)2.avi. With respect to count eleven file name is 539.avi. * * *

Plea Hearing Trans. (Sept. 9, 2015), p. 3-5.

{¶ 50} As previously noted, Magnone claims that the State omitted a necessary fact of the pandering offense at the plea hearing because the State indicated that he merely "possessed" the offending material as opposed to either creating, recording photographing, filming, developing, reproducing, or publishing it. However, there is evidence in the record that Magnone admitted to downloading and saving the offending material onto his computer, and we have previously held that downloading the offending material from the Internet onto a personal computer is sufficient evidence for a trier of fact to conclude that the images were "reproduced" for purposes of R.C. 2907.322(A)(1). *State v. Hodge*, 2d Dist. Miami No. 2013 CA 27, 2014-Ohio-1860, ¶ 10; *State v. Sullivan*, 2d Dist. Montgomery No. 23948, 2011-Ohio-2976, ¶ 33-34. The statement that Magnone "possessed" the offending material and the omission of the fact that Magnone downloaded it onto his computer does not negate the existence of the "reproduced" element of the offense since one can obviously both download and possess the offending images.

{¶ 51} Magnone also argues that the bill of particulars merely stated he "possessed" the offending images; however, he failed to object to the State's bill of particulars as required by Crim.R. 12(C)(2). Accordingly, Magnone has waived all but plain error with respect to the adequacy of the bill of particulars. *State v. Turner*, 11th Dist. Ashtabula No. 2010-A-0060, 2011-Ohio-5098, ¶ 34, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 26. "Plain error is present only if the error is obvious and, but for the error, the outcome of the proceedings clearly would have been different." *Id.*, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108.

{¶ 52} In this case, we do not find that the State's failure to indicate in the bill of particulars that Magnone downloaded the offending images to his computer would have changed the outcome of the proceedings, i.e., that Magnone would not have pled no contest to the pandering charges. The indictment contained sufficient allegations to state an offense for violating R.C. 2907.322(A)(1) and thus notified Magnone of the conduct for which he was pleading no contest. Furthermore, the record indicates that prior to pleading no contest, Magnone was well aware that child pornography was discovered on his computer.

{¶ 53} By pleading no contest, Magnone admitted to the truth of the facts alleged in the indictment and "where the indictment, information, or complaint contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense." *Bird*, 81 Ohio St.3d at 584, 692 N.E.2d 1013. *Accord Woolridge*, 2d Dist. Montgomery No. 18086, 2000 WL 1475699 at *2. Because the indictment contained sufficient allegations to state an offense for Pandering

Sexually-Oriented Material Involving a Minor in violation of R.C. 2907.322(A)(1), the trial court correctly found Magnone guilty of that offense following his no contest plea.

{¶ 54} We note that under this assignment of error, Magnone also raises an ineffective assistance claim. To establish ineffective assistance of trial counsel, a defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that the defendant was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To succeed on such a claim, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the defendant's trial would have been different. *Id.*

{¶ 55} Magnone claims his counsel rendered ineffective assistance by permitting him to enter a no contest plea when there was, according to Magnone, insufficient evidence to sustain a conviction under R.C. 2907.322(A)(1). However, as previously discussed, the record indicates there was sufficient evidence to sustain such a conviction given that Magnone admitted to downloading and saving child pornography onto his personal computer during his interview with Detectives Fent and Pergram and also had 35 images containing sexually-oriented material involving a minor on two files recovered from his computer. Accordingly, Magnone's ineffective assistance claim must fail, as he has failed to establish that his counsel's performance was deficient.

{¶ 56} For the foregoing reasons, Magnone's Second Assignment of Error is overruled.

**Third Assignment of Error**

{¶ 57} Magnone's Third Assignment of Error is as follows:

THE DEFINITION OF NUDITY IS VAGUE AND THEREFORE MAGNONE'S PLEA AS TO COUNTS TWELVE AND FIFTEEN MUST BE VACATED.

{¶ 58} Under his Third Assignment of Error, Magnone challenges his conviction for two counts of Illegal Use of a Minor in Nudity-Oriented Material in violation of R.C. 2907.323(A)(3). Magnone claims that the definition of "nudity," as that term is used in R.C. 2907.323(A)(3), is unconstitutionally vague.

{¶ 59} While under the Supplemental Assignment of Error we have already decided to reverse Magnone's conviction and sentence for the illegal use offenses as fourth-degree felonies, we will nevertheless address this argument, as it still applies to the fifth-degree felony offenses for which Magnone should have been convicted and sentenced.

{¶ 60} "When a statute is challenged under the due-process doctrine prohibiting vagueness, the court must determine whether the enactment (1) provides sufficient notice of its proscriptions to facilitate compliance by persons of ordinary intelligence and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 84, citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). "The void-for-vagueness doctrine does not require statutes to be drafted with scientific precision." (Citation omitted.) *Perez v. Cleveland*, 78 Ohio St.3d 376, 378, 678 N.E.2d 537 (1997). "Instead, it permits a statute's certainty to be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable

interpretation in favor of finding the statute constitutional." (Citation omitted.) *Id.* at 378-379.

{¶ 61} The statute at issue, R.C. 2907.323(A)(3), provides as follows:

No personal shall * * * [p]ossess or view any material or performance that shows a minor who is not the person's child or ward *in a state of nudity*, unless one of the following applies:

(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance.

(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

(Emphasis added.)

{¶ 62} The term "nudity" is defined in R.C. 2907.01(H) as "the showing, representation, or depiction of human male or female genitals, pubic area, or buttocks with less than a full, opaque covering, or of a female breast with less than a full, opaque covering of any portion thereof below the top of the nipple, or of covered male genitals in a discernibly turgid state."

{¶ 63} In *State v. Young*, 37 Ohio St.3d 249, 525 N.E.2d 1363 (1988), the Supreme Court of Ohio narrowed the definition of "nudity" as used in R.C. 2907.323(A)(3) in response to a First Amendment attack on the statute for overbreadth. Specifically, the Supreme Court construed R.C. 2907.323(A)(3) to prohibit "the possession or viewing of material or performance of a minor who is in a state of nudity, *where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals*, and where the person depicted is neither the child nor the ward of the person charged." (Emphasis added.) *Id.* at 252*, rev'd on other grounds, Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). Therefore, according to *Young*, for purposes of violating R.C. 2907.323(A)(3), the element of nudity must constitute a "lewd exhibition" or involve a "graphic focus on the genitals." *State v. Martin*, 2014-Ohio-3640, 18 N.E.3d 799, ¶ 12 (2d Dist.).

{¶ 64} In reaching this decision, the Supreme Court explained that while R.C. 2907.323(A)(3) does not expressly limit the prohibited state of nudity to a lewd exhibition or a graphic focus on genitals, the proper purposes exceptions in subsections (a) and (b) of the statute, showed a clear purpose to only prohibit conduct that is "*not* morally innocent, *i.e.*, the possession or viewing of the described material for p[r]urient purposes." (Emphasis sic.) *Young* at 251-252. "So construed, the statute's proscription is not so broad as to outlaw all depictions of minors in a state of nudity, but rather only those depictions which constitute child pornography." *Id.* at 252.

{¶ 65} In *Osborne,* the United States Supreme Court endorsed the narrowed construction of R.C. 2907.323(A)(3), although *Osborne* reversed *Young* on other grounds. The court in *Osborne* found that R.C. 2907.323(A)(3) passed constitutional

muster on all issues of vagueness and overbreadth and specifically stated that:

It is obvious from the face of § 2907.323(A)(3) that the goal of the statute is to eradicate child pornography. The provision criminalizes the viewing and possessing of material depicting children in a state of nudity for other than "proper purposes." The provision appears in the "Sex Offenses" chapter of the Ohio Code. Section 2907.323 is preceded by § 2907.322, which proscribes "[p]andering sexually oriented matter involving a minor," and followed by § 2907.33, which proscribes "[d]eception to obtain matter harmful to juveniles." That Osborne's photographs of adolescent boys in sexually explicit situations constitute child pornography hardly needs elaboration. Therefore, although § 2907.323(A)(3) as written may have been imprecise at its fringes, someone in Osborne's position would not be surprised to learn that his possession of the four photographs at issue in this case constituted a crime.

*Osborne* at 116.

{¶ 66} Accordingly, in reading the definition of "nudity" in R.C. 2907.01(H) in conjunction with the proper purpose exclusions in sections (a) and (b) of R.C. 2907.323(A)(3), a person of ordinary intelligence would have sufficient notice of what conduct is proscribed by the statute, i.e., possessing or viewing child pornography. That the nudity must constitute a "lewd exhibition" or involve a "graphic focus on the genitals" further clarifies the prohibited conduct so as not to punish morally innocent behavior. Again, it is clear from the statute what conduct is prohibited, and it is specific enough to prevent arbitrariness or discrimination in its enforcement.

{¶ 67} We note that both Magnone and the State discuss our decision in *Martin*, 2014-Ohio-3640, 18 N.E.3d 799, which is currently being reviewed by the Supreme Court of Ohio. In *Martin*, we declined to apply the narrowed definition of "nudity" in *Young* to R.C. 2907.323(A)(1), a statute which prohibits one from photographing, creating, directing, producing, or transferring any material or performance that shows a minor in the state of nudity. We found that First Amendment protection concerns are less compelling for the conduct prohibited in R.C. 2907.323(A)(1), as opposed to the conduct in section (A)(3), i.e., merely possessing or viewing an offending image. *Id.* at ¶ 20. Therefore, we held that the statutory definition of "nudity" in R.C. 2907.01(H) applies to section (A)(1), not the narrower "lewd exhibition" and "graphic display of genitals" definition. *Id.* at ¶ 21

{¶ 68} Because the instant case involves R.C. 2907.323(A)(3), the holding in *Martin* is inapplicable here. The issue currently before the Supreme Court is: "With respect to R.C. 2907.323(A)(1), which proscribes the creation or production of nudity-oriented material involving a minor, which definition of nudity applies: the statutory definition (R.C. 2907.01(H)), or the narrower definition set forth in *State v. Young*, 37 Ohio St.3d 249, 525 N.E.2d 1363, which requires additional elements of 'lewd depiction' and 'graphic focus on the genitals?' " *State v. Martin*, 141 Ohio St.3d 1452, 2015-Ohio-239, 23 N.E.3d 1194 (2015). Therefore, regardless of what the Supreme Court's holding will be in *Martin*, the fact remains that *Young* requires the nudity in R.C. 2907.323(A)(3) to constitute "a lewd exhibition" or "involve graphic display of genitals." As noted above, such a definition is not unconstitutionally vague given the proper purpose exclusions in sections (a) and (b) of the statute.

**{¶ 69}** Magnone's Third Assignment of Error is overruled.

## Conclusion

**{¶ 70}** Given that we have sustained Magnone's Supplemental Assignment of Error and overruled his remaining three assignments of error, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. The only portion of the trial court's judgment that is reversed is Magnone's conviction and sentence for the two counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance in violation of R.C. 2907.323(A)(3). On remand, the court shall hold a new hearing with respect to those charges only.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Megan M. Farley
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Douglas M. Rastatter