**[Cite as *State v. Stutz*, 2023-Ohio-1082.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29521 |
| | : | |
| v. | : | Trial Court Case No. 2020 CR 01817 |
| | : | |
| CHARLES DD STUTZ | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 31, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ELIZABETH A. ELLIS, Attorney for Appellee

CHARLES M. BLUE, Attorney for Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Charles Stutz appeals from his convictions in the Montgomery County Court of Common Pleas after he pleaded guilty to four counts of pandering sexually oriented material involving a minor – two as felonies of the second degree and two as felonies of the fourth degree – and was sentenced to 8 to 12 years in prison. He was also classified as a Tier I and Tier II sex offender. For the reasons that

follow, the judgment of the trial court will be affirmed in part and reversed in part, and the case will be remanded for resentencing only.

## I. Facts and Procedural History

**{¶ 2}** In early 2019, Moraine police were called to meet with a citizen who had reportedly found a SD card that contained images of child sexual abuse. During their investigation, law enforcement discovered more than 300 child sexual abuse videos on the SD card as well as folders which identified Stutz as its owner.

**{¶ 3}** Further investigation led officers to additional devices – two cell phones and an additional SD card – found in a towed car belonging to Stutz. After obtaining a search warrant for the phones, investigators found hundreds of additional images and videos depicting child sexual abuse and applications used to download and view them.

**{¶ 4}** Images and videos were sent to the National Center for Missing and Exploited Children, which determined that 18 of the images contained known victims from the United States, Canada, Ecuador, France, Germany, Moldova, and Slovenia. Many of the images were of children under the age of 13, some as young as five.

**{¶ 5}** Moraine investigators also spoke with several people associated with Stutz who all confirmed that they had witnessed him view inappropriate images, and a former employer confirmed that Stutz had been terminated after he was observed looking at images at work.

**{¶ 6}** Stutz was eventually indicted on 18 counts of pandering sexually oriented material involving a minor, in violation of R.C. 2907.332(A)(1), 35 counts of pandering sexually oriented material involving a minor, in violation of R.C. 2907.332(A)(5), and one

count of pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(5). After negotiations with the State, Stutz agreed to plead guilty to four violations of R.C. 2907.332: Counts I and II, which were felonies of the second degree, and Counts XIX and XX, which were felonies of the fourth degree. In return, the State agreed to dismiss the remaining charges. Additionally, the parties agreed to a jointly-recommended sentence of 5-10 years in prison.

{¶ 7} On June 22, 2022, Stutz appeared for disposition. The trial court sentenced him to 8 to 12 years on Count I, 8 to 12 years on Count II, 18 months on Count XIX, and 18 months on Count XX. The court then ordered all the sentences to be served concurrently for a total of 8 to 12 years in prison. The court also classified Stutz as a Tier I and Tier II sex offender.

{¶ 8} Stutz has filed a timely appeal which raises three assignments of error.

## II.     Allied Offenses

{¶ 9} In his first assignment of error, Stutz argues that three of his convictions (Counts I, XIX, and XX) should have merged because they constituted a single offense with a single animus and harm.

{¶ 10} Initially, we note that it is the State's position that Stutz has forfeited all but plain error because his merger argument was not raised below. "An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability

that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. After reviewing the record and Stutz's arguments as to whether the challenged counts were allied offenses, we will continue our analysis.

<u>Merger</u>

**{¶ 11}** When a defendant's conduct supports multiple offenses, courts conduct an allied offenses analysis to determine if the charges merge or if the defendant may be convicted of separate crimes. This process is governed by statute, R.C. 2941.25, and Ohio Supreme Court jurisprudence from *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. R.C. 2941.25 provides:

> (A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The statute implements the protections of the Double Jeopardy Clauses of the United States and Ohio Constitutions, which prohibit a second punishment for the same crime. *State v. Frazier*, 2d Dist. Clark No. 2021-CA-46, 2021-Ohio-4155, ¶ 18.

{¶ 12} "As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Ruff* at ¶ 31; *State v. Davison*, 2d Dist. Montgomery No. 28579, 2021-Ohio-728, ¶ 29. Put another way, offenses are of dissimilar import when the defendant's actions constitute offenses involving separate victims or if the harm resulting from each offense is separate and identifiable. *Ruff* at ¶ 23.

{¶ 13} Here, Stutz was convicted of two counts (Count I and Count II) of pandering sexually oriented material involving a minor, a violation of R.C. 2907.332(A)(1), felonies of the second-degree, and two counts (Count XIX and XX) of pandering sexually oriented material involving a minor, a violation of R.C. 2907.332(A)(5), felonies of the fourth-degree. And while there were four counts, they were based on only two images. Counts I, XIX, and XX were based on an image with the identifier "b98bb541d5f56e36b9f4bb495339b3b6," while the image in Count II was identified as "02a7139afba9c4ef9cd935c9115f5007." The image in Count I was discovered on a Samsung Galaxy J3 phone and on an SD card found in that phone inside Stutz's towed vehicle. The image in Count XIX was found on the SD card in the Samsung Galaxy phone, and Count XX's image was located on the Samsung Galaxy phone itself. The image that was the genesis of Count II was found on the SD card initially discovered in a parking lot

and then turned in to Moraine police. The same image was also located on the Samsung Galaxy phone that was in Stutz's towed vehicle.

{¶ 14} Stutz makes several arguments. His first is that because Counts I, XIX, and XX were based on the same image, and because, he claims, the image was found in the same place (the phone), the convictions were based on a singular act and should have merged. He also reasons that the offenses were not dissimilar in import or significance and were not committed with separate animus or motivation. We disagree.

{¶ 15} Ohio courts have uniformly held that child pornography offenses are of dissimilar import when each offense involves a separate file or image. *See e.g. State v. Sanders*, 2d Dist. Clark No. 2019-CA-86, 2021-Ohio-2431; *State v. Stapleton*, 4th Dist. Pickaway No. 19CA7, 2020-Ohio-4479; *State v. Mannarino*, 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795. Because the image in Count II is different than that in Counts I, XIX, and XX, merger was not available as to that Count.

{¶ 16} To determine whether the other counts should have merged, we must analyze how the offenses were committed. Stutz was found to have downloaded the pornographic material from the internet (and likely from another person, based on the software found on his phone) onto his Samsung Galaxy phone and onto an SD card where he then viewed and/or stored it. Based on that conduct, we conclude that two separate acts occurred.

{¶ 17} We have held that a person who views images or videos downloaded from the internet "possesses" that material in contravention of R.C. 2907.332(A)(5) (no person shall knowingly solicit, receive, purchase, exchange, possess, or control any material that

shows a minor participating or engaging in sexual activity, masturbation, or bestiality). *See State v. Hodge*, 2d Dist. Miami No. 2013-CA-27, 2014-Ohio-1860, ¶ 10; *State v. Sanders*, 2d Dist. Clark No. 2019-CA-86, 2021-Ohio-2431, ¶ 38.

{¶ 18} We have also said that downloading a video or picture creates a copy of the original and that the act of downloading from the internet onto a device is sufficient evidence for a trier of fact to conclude that the images were "reproduced" for the purposes of R.C. 2907.322(A)(1) (no person shall create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality). *Id.*; *State v. Magnone*, 2016-Ohio-7100, 72 N.E.3d 212, ¶ 50 (2d Dist.). *Accord State v. Butler*, 9th Dist. Summit No. 24446, 2009-Ohio-1866, ¶ 24; *State v. Kraft*, 1st Dist. Hamilton No. C060238, 2007-Ohio-2247, ¶ 92 (the State can prove the defendant reproduced the material by presenting evidence he downloaded images from the internet onto a hard drive).

{¶ 19} We conclude, then, that downloading (creating a copy or reproducing) an image is a separate act – separate conduct – from simply possessing it. Stutz downloaded the images (violating R.C. 2907.322(A)(1)) and then possessed and viewed them (violating R.C. 2907.322(A)(5)).

{¶ 20} It is also noteworthy that the image from Count XIX was found in a different physical location than the one from Count XX. Count XIX's file was found on the SD card which was in the phone, and Count XX's image was on the phone itself. Even though the SD card was *in* the phone, the image on the card would exist separately. The image on the card could be viewed in almost any other device simply by inserting the card into it.

The varying physical locations of the downloads further leads to the conclusion that there was separate conduct.

{¶ 21} Because there was different conduct and the crimes were committed separately, they were not allied offenses, and the convictions properly did not merge.

{¶ 22} The assignment of error is overruled.

### III.    Guilty Plea

{¶ 23} Stutz contends in his second assignment of error that his guilty plea was not knowingly, intelligently, and voluntarily made. We disagree.

{¶ 24} To satisfy the requirements of due process, a guilty plea must be made knowingly, intelligently, and voluntarily, and the record must affirmatively demonstrate as much. *State v. Harris*, 2d Dist. Clark No. 2020-CA-29, 2021-Ohio-1431, ¶ 15. For a plea to be made knowingly, intelligently, and voluntarily, the trial court must follow the mandates of Crim.R. 11(C). *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. "[T]he rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.' " *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975).

{¶ 25} Crim.R. 11(C)(2)(c) mandates that the trial court inform the defendant of the constitutional rights he is waiving like the right to a jury trial, the right to confront witnesses, the right to compulsory process, the right against self-incrimination, and the right to require the State to establish guilt beyond a reasonable doubt. *State v. Perdue*, 2022-

Ohio-722, 185 N.E.3d 683, ¶ 11 (2d Dist.). Strict compliance with the rule is required. A failure to strictly comply with this part of the Rule invalidates the plea. *Id.*

{¶ 26} "A trial court must substantially comply with the notification of non-constitutional rights contained in Crim.R. 11(C)(2)(a) and (b), and a defendant must show prejudice before a plea will be vacated for failure to substantially comply with these notifications." *State v. Easter*, 2016-Ohio-7798, 74 N.E.3d 760, ¶ 8 (2d Dist.). "Substantial compliance" means that under the totality of the circumstances the defendant understands the implications of his plea and the rights he is giving up. *State v. Thomas*, 2d Dist. Montgomery No. 26907, 2017-Ohio-5501, ¶ 37; *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). A defendant challenging a guilty plea on non-constitutional grounds "must show a prejudicial effect" – in other words, "that the plea would otherwise not have been entered." *Id. at ¶ 38.*

{¶ 27} Both parties agree that Stutz was properly informed of his constitutional rights; but Stutz argues that the trial court erred by not properly advising him of the maximum potential sentence as required by Crim.R. 11(C)(2)(a). To determine if Stutz understood the implications of his plea and the rights he was giving up, we must examine the transcripts.

{¶ 28} There is no question that the plea hearing was *messy*. The attorneys for both sides and the trial court struggled to reconcile the jointly-recommended sentence of 5 to 10 years with the indefinite sentence structure of the Reagan Tokes Act; there was even discussion about changing the terms of the proposed sentence to better fit within the structure imposed by the law. Eventually, though, Stutz indicated that he understood

the sentencing range that could effectuate his 5 to 10-year deal and that if the trial court sentenced him to 8 years (the longest minimum term available for second-degree felonies), he could possibly serve as much as 12, although the maximum was not up to the court.

{¶ 29} The colloquy then moved on to the advisement of maximum penalties, and it is here that the trial court erred. Stutz was informed that the fourth-degree felonies were not subject to the Reagan Tokes Act, so the maximum sentence for each was 18 months for a consecutive total of 36 months. The court then incorrectly described the maximum consecutive total for the second-degree felonies: "Now, I'm not going to do this because of the plea agreement. But do you understand that if I did sentence you to the maximum on the felonies of the second degree, being 8 to 12 years, and I ran one consecutive to that, that could be 16 to * * * 24, okay?" Plea Tr. at 15. The court's math was incorrect.

{¶ 30} According to R.C. 2929.144(B)(2), when imposing consecutive sentences on Reagan Tokes qualifying offenses (generally first and second degree felonies not carrying life-tails, in this case Counts I and II), "the court shall add all of the minimum terms imposed on the offender * * * for a qualifying felony * * * and the maximum term shall be equal to the total of those terms so added by the court plus fifty percent of the longest minimum term * * * for the most serious felony being sentenced." In other words, when running qualifying offenses consecutively, the court must add up the minimum terms of the Reagan Tokes qualifying offenses (in this case 8 years + 8 years = 16 years) and then add 50% of the minimum for the most serious one being sentenced (50% of 8 years is 4 years). Based on the statute, then, the most Stutz could have been sentenced

to on the second-degree felonies was 20 years (8 + 8 + 4 = 20), not 24 years as described by the trial court. The aggregate sentence that Stutz faced if all counts were run consecutively was a minimum of 19 years (18 months + 18 months + 8 years + 8 years) and a maximum of 23 years (19 + 4).

{¶ 31} Despite the error in the explanation of the maximum penalty involved, the record reveals that the trial court otherwise complied with the requirements of Crim.R. 11(C)(2)(a) and (b). Because there was partial compliance, Stutz must establish that the trial court's error caused prejudice. *State v. Perdue*, 2022-Ohio-722, 185 N.E.3d 683, ¶ 12 (2d Dist.). "In this context, prejudice is measured by whether the defendant would have entered the plea if there had been full compliance[.]" *Id.*

{¶ 32} Even though Stutz was incorrectly advised about the maximum sentences he was facing, it is reasonable to believe that if Stutz were willing to plead guilty to charges with a purported maximum prison term of 24 years, he was even likelier to have pleaded guilty to those with a maximum term of 23 years. Additionally, this was a jointly-recommended sentence. The parties negotiated a sentence somewhere between 5 and 10 years, and the trial court imposed a sentence in which it will be presumed that Stutz will be released after 8. Whether he is imprisoned beyond that will be up to him. Because he cannot show prejudice (and never argues that he would not have pled guilty without the mistake), the second assignment of error is overruled.

## IV. Sex Offender Registry

{¶ 33} In his third assignment of error, Stutz asserts, and the State agrees, that he was improperly classified as a Tier I sex offender on the fourth-degree felony offenses.

We concur that this was a mistake.

{¶ 34} R.C. 2950.01(F)(1)(a) clearly states that a person who is convicted of or pleads guilty to a violation of R.C. 2907.322 is a Tier II sex offender. The statute makes no distinctions between the level of offenses in R.C. 2907.322 – it simply states that any violation requires a Tier II classification. So it would not matter if one were convicted of R.C. 2907.322(A)(1) as a second-degree felony or R.C. 2907.322(A)(5) as a fourth-degree felony; any conviction under that statute requires in a Tier II classification. Further, R.C. 2950.01(E), which defines Tier I sex offenses, makes no reference to crimes in violation of R.C. 2907.322.

{¶ 35} In this case, even though Stutz was told during his plea hearing that he would be classified as a Tier II sex offender (thus not affecting the voluntariness of his plea), at the disposition, the trial court notified Stutz that he would be a Tier II sex offender based on the R.C. 2907.322(A)(1) convictions and a Tier I sex offender on account of the R.C. 2907.322(A)(5) convictions. Because any violation of R.C. 2907.322 leads to a Tier II sex offender classification, Stutz's classification as Tier I was in error and must be reversed. The third assignment of error is affirmed.

V.    Conclusion

{¶ 36} Having concluded that Stutz's convictions should not have been merged and that he made his plea in a voluntary manner, the judgment of the trial court will be affirmed as to those issues. However, because it was an error for Stutz to be classified as a Tier I sex offender, the court's judgment on that matter will be reversed and remanded for the limited purpose of reclassifying him as a Tier II sex offender on the

fourth-degree felonies in Counts XIX and XX.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.