[Cite as *State v. Wilson*, 2018-Ohio-902.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-039** |
| DAWUD WILSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000326.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Anna C. Kelley,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Dawud Wilson, appeals his conviction and sentence, following his no contest plea to robbery and a repeat violent offender specification, in the Lake County Court of Common Pleas. The principal issue is whether the trial court erred in denying appellant's motion to suppress. For the reasons that follow, we affirm.

{¶2} On June 1, 2015, appellant was indicted for aggravated robbery, a felony-one, with a repeat violent offender ("RVO") specification (Count 1); robbery, a felony-

two, with an RVO specification (Count 2); and receiving stolen property, a felony-five (Count 3). Appellant pled not guilty.

{¶3} On July 16, 2015, appellant filed a motion to suppress, arguing the sheriff's deputy lacked reasonable suspicion to stop him. Evidence at the suppression hearing revealed that on April 17, 2015, at about 1:00 p.m., appellant walked into the Buckeye Credit Union in Painesville Township and handed the teller a note, saying he had a loaded gun on him and to place all the bills from her drawer on the counter. Appellant's note indicated that if she did not follow the instructions in the note, he would use the gun to hurt her. The teller produced $1,972. Appellant took the money and left.

{¶4} Lake County Sheriff's deputies immediately responded. Based on information provided by deputies, dispatch issued a "Be On The Lookout" broadcast to area law enforcement agencies with a description of the suspect and his vehicle.

{¶5} Deputy William Leonello, a 34-year veteran police officer, said he was on duty at the intersection of Route 84 and Route 91, when he heard a broadcast from dispatch that a robbery had just occurred at the Buckeye Credit Union at the intersection of Fairgrounds Road and Route 20. Dispatch described the suspect as a black male dressed in black clothing with a beard driving a small tan or gold pickup truck, possibly a Chevrolet S-10.

{¶6} Initially, Deputy Leonello planned to go to Route 2 to try to locate the suspect, but dispatch then said the suspect was last seen driving south on a side street off Woodland Road. As a result, the deputy took Route 91 to I-90. He drove east on I-90 and then stopped in a turnaround near Route 306. Turnarounds on I-90 connect the eastbound and westbound lanes of traffic. While positioned perpendicular to I-90 westbound, Deputy Leonello observed oncoming traffic.

2

{¶7} Deputy Leonello said he was not just looking for Chevrolet S-10s; he was looking for any vehicle that fit the description, such as a Ford Ranger. The deputy said he was there for less than two minutes when he saw a small tan pickup truck, a Ford Ranger, travelling westbound. The deputy saw the driver was a black male wearing dark clothing; however, he could not see whether the driver had a beard because he was looking away from him. The truck was in the left (high-speed) lane, but travelling at a normal rate of speed.

{¶8} Deputy Leonello said that as the truck passed him, he still could not see the driver's face because he turned his head to the right and did not look toward him. The deputy then pulled out into the westbound lanes of travel and followed the truck. He was planning to stop and identify the driver. The deputy did not, however, activate his overhead lights; he just followed him, trying to get the number on his license plate.

{¶9} Then, as Deputy Leonello went under the Route 306 bridge, dispatch said the suspect vehicle was a tan Ford Ranger, not a Chevrolet S-10. The deputy said the truck he was following matched that description. He also said the description he had of the suspect fit the description of the male he was following, but he still could not tell if the driver had a beard.

{¶10} Deputy Leonello tried to call for back up, but could not get through. As he approached the Kirtland Road bridge, he saw a Willoughby Police cruiser positioned in a turnaround just west of the bridge. The deputy continued to follow the suspect, but still did not activate his overhead lights.

{¶11} The driver of the Willoughby Police cruiser positioned in the turnaround was Willoughby Police officer Charles Krejsa, a 20-year veteran police officer. He testified he heard dispatch broadcast that a robbery had just occurred at the credit

3

union. He heard the dispatch describe the suspect as a black male wearing a black shirt with a beard who had stolen cash and left the scene. After hearing the suspect was last seen driving south on Fairgrounds Road toward Route 84, Officer Krejsa believed the suspect was headed for I-90. As a result, the officer drove to Route 84, then to Route 306, and then onto I-90.

{¶12} Officer Krejsa said that about five minutes after he heard the initial dispatch, he pulled into the turnaround at the Kirtland Road overpass. Officer Krejsa said this location was about ten minutes away from where the suspect was last seen.

{¶13} Officer Krejsa said he was observing westbound traffic for one to two minutes when he saw a small, tan Ford Ranger pickup truck in the left-hand lane. He said that because it was similar to an S-10, it was "immediately apparent" this truck matched the description of the suspect vehicle. He said the radio band he was using does not provide all information being broadcast, and he did not hear the subsequent broadcast that the suspect vehicle was a Ford Ranger. Officer Krejsa said that as the driver of the truck drove by, he saw the driver was a black male wearing a black shirt; however, he said he could not see whether the driver had a beard because the male was looking away from him as he drove by.

{¶14} Officer Krejsa said he pulled out to follow the truck and, as he did, he noticed a Lake County Sheriff's vehicle was following the truck. Officer Krejsa said his intent was to see if there was any additional information he could get to "cement [his] suspicions" that this was the suspect vehicle. Officer Krejsa said that the overhead lights of the Sheriff's Office's cruiser were not activated at that time.

{¶15} Deputy Leonello testified that he radioed dispatch for a registration check on the truck. He provided the license plate number and a description of the truck. He

4

did not hear back from dispatch, but, based on the information he had, he decided to stop the driver of the truck. Deputy Leonello activated his overhead lights. Officer Krejsa said that, in order to provide back up, he also activated his overheads.

{¶16} The officers testified the driver pulled his truck across the three lanes of traffic to the right berm without incident. Deputy Leonello exited his cruiser and Officer Krejsa parked behind his vehicle and exited his. Deputy Leonello called out to the driver, later identified as appellant, to exit his vehicle; keep his hands where he could see them; turn around; and walk backwards toward him. Appellant complied. Officer Krejsa told appellant he was being detained but not arrested and mirandized him.

{¶17} The officers saw appellant was wearing a black shirt and dark pants. Both said that appellant did not have a beard, but he had what appeared to be glue on his jaw and under his lower lip.

{¶18} The officers secured appellant in Officer Krejsa's cruiser because it was equipped with video and they then approached appellant's truck. They did not enter the truck at that time, but from the outside, they saw a black jacket in the back seat with $50 bills protruding from the pocket.

{¶19} Appellant did not present any opposing testimony or evidence and, thus, the officers' testimony was undisputed.

{¶20} When appellant's vehicle was later inventoried, officers found his robbery note on the floor near the center console; the exact amount of cash stolen from the bank in appellant's jacket, which was "bait" money (cash that is recorded for tracking purposes); and a three-page list of other banks with their locations, escape routes, and appellant's notes as to whether or not they would be good targets.

{¶21} Following a hearing, the trial court denied the motion to suppress.

{¶22} On October 19, 2015, pursuant to the parties' plea bargain, appellant pled no contest to robbery and the RVO specification as charged in Count 2 in exchange for the state's agreement to dismiss the remaining counts. The court found appellant's plea was voluntary, accepted the plea, and found him guilty of robbery and the RVO specification.

{¶23} At his sentencing, the trial court reiterated its findings under the RVO statute and sentenced appellant as an RVO. The court sentenced him to eight years in prison for robbery and to two years for the RVO specification, the two terms to be served consecutively to each other, for a total of ten years in prison.

{¶24} Appellant appeals, asserting three assignments of error. For his first, he alleges:

{¶25} "The trial court erred by denying the defendant-appellant's motion to suppress in violation of his due process rights and rights against unreasonable search and seizure as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 14, Article I of the Ohio Constitution."

{¶26} Appellant argues Deputy Leonello lacked reasonable suspicion to stop him and, thus, any evidence obtained as a result of the stop must be suppressed.

{¶27} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and is in the best position to resolve factual questions and assess the credibility of the witnesses. *Id.*; *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "[T]he trier of fact * * * is in the best position to observe and evaluate the demeanor, voice inflection, and gestures of the witnesses." *State v. Dach*, 11th Dist. Trumbull Nos. 2005-

6

T-0048 and 2005-T-0054, 2006-Ohio-3428, ¶42. "[T]he factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *Warren v. Simpson*, 11th Dist. Trumbull No. 98-T-0183, 2000 WL 286594, *3 (Mar. 17, 2000).

{¶28} An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by some competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594 (4th Dist.1993). Moreover, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. *Warren, supra*. Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶29} "A police officer may stop an individual if the officer has a reasonable suspicion, based on specific and articulable facts that criminal behavior has occurred * * *." *State v. Tarrance*, 11th Dist. Portage No. 2012-P-0073, 2013-Ohio-2831, ¶19, citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968). An investigatory stop must be limited in duration and scope and can only last as long as necessary for an officer to confirm or dispel his suspicion of criminal activity. *State v. Weimer*, 11th Dist. Lake No. 2013-L-008, 2013-Ohio-5651, ¶44, citing *Terry, supra*. A reasonable suspicion requires a minimal level of objective justification, i.e., something more than an unparticularized suspicion or hunch. *Id*. A brief stop of a suspicious individual to determine his identity or maintain the status quo while obtaining more information may be the most reasonable course of action in light of the facts known to the officer at the time. *Id*. at ¶46. "[A]n objective and particularized suspicion that criminal activity was afoot must be based on the * * * totality of the circumstances." *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991). "Furthermore, these circumstances are to be viewed through the eyes of the reasonable

7

and prudent police officer on the scene who must react to events as they unfold." *Id.* at 87-88.

{¶30} "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *Id.* at 88. Further, a police officer may rely on police radio dispatch to provide reasonable suspicion of criminal conduct to support an investigatory detention. *State v. Burrows*, 11th Dist. Trumbull No. 2000-T-0089, 2002 WL 605106, *5 (Apr. 19, 2002).

{¶31} Based on our review of the evidence, Deputy Leonello had a reasonable, articulable suspicion of criminal activity that warranted his investigatory stop of appellant. The deputy, who has 34 years experience as a police officer, learned from dispatch that a bank robbery had just been committed. Dispatch provided the deputy with the suspect's last known location and direction of travel, which led the deputy to conclude that the suspect would likely be headed to I-90 as a means of escape. Further, the deputy obtained a description of the suspect and his vehicle. In less than two minutes from establishing his position in the turnaround, Deputy Leonello saw appellant's vehicle, which matched the description of the suspect's truck in terms of the color, size, make, and model. Significantly, the deputy did not stop appellant until *after* dispatch advised the suspect vehicle was a Ford Ranger. Further, dispatch described the suspect as a black male wearing black clothing and a beard. When appellant passed Deputy Leonello while travelling westbound on I-90, the deputy saw a black male wearing dark clothes. The only reason the deputy was unable to confirm whether appellant had a beard was because he turned away when he saw the deputy. Appellant thus matched the suspect's description in terms of his gender, race, and clothing. As a

8

result, when the deputy stopped appellant, he had a reasonable, articulable suspicion that he was the robber.

{¶32} Appellant's reliance on *State v. Woods*, 11th Dist. Lake No. 99-L-111, 2000 WL 1370850 (Sep. 22, 2000), in which this court invalidated a stop, is misplaced as its facts are easily distinguishable from those presented here. In *Woods*, the officer testified he stopped the defendant because he matched the suspect's description and made furtive movements. However, the suspect was described as wearing a black hooded nylon coat, while the defendant was wearing a green coat with a fur collar. Further, in *Woods* the officer's decision to look for the suspect near the entrance of the freeway was based only on a hunch that the freeway was the most likely means of escape, whereas, here, dispatch advised officers of appellant's escape route. Further, in *Woods*, the officer was not informed the suspect had a vehicle and thus was not informed of the description of a vehicle, while here, before Deputy Leonello stopped appellant, he had been informed that the suspect was driving a tan Ford Ranger and that was exactly the type of vehicle appellant was driving. Further, while this court in *Woods* held that the act of the defendant in turning his face from police was not a furtive movement, here, the state did not argue appellant's similar action was a furtive movement. Rather, the state relied on this evidence to explain why the officers could not confirm whether appellant had a beard.

{¶33} We therefore hold the trial court did not err in denying appellant's motion to suppress.

{¶34} For his second assigned error, appellant contends:

9

{¶35} "The trial court erred to the prejudice of the defendant-appellant when it sentenced him to an additional and consecutive two years in prison for a repeat violent offender specification."

{¶36} Appellant argues the trial court erred in sentencing him for the RVO specification because, he contends, the record did not support one of the required findings for that specification.

{¶37} The Supreme Court of Ohio, in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, held that when reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *Id.* at ¶1. Thus, applying the plain language of that statute, the Supreme Court held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* The Court further held that "appellate courts may not apply the abuse-of-discretion standard in sentencing-term challenges." *Id.* at ¶10.

{¶38} R.C. 2929.14(B)(2)(b) sets forth the findings required for a trial court to sentence an offender for an RVO specification. That section provides, in pertinent part:

{¶39} The court shall impose on an offender the longest prison term authorized * * * for the [underlying] offense and shall impose on the offender an additional definite prison term [for the RVO specification] of one, two, three, four, five, six, seven, eight, nine, or ten years if all of the following criteria are met:

{¶40} (i) The offender is convicted of * * * a specification * * * that the offender is a repeat violent offender.

{¶41} (ii) The offender within the preceding twenty years has been convicted of * * * three or more offenses described in division (CC)(1) of section 2929.01 of the Revised Code [i.e., any felony of the first or second degree that is an offense of violence, such as

10

aggravated robbery or robbery], including all offenses described in that division of which the offender is convicted * * * in the current prosecution and all offenses described in that division of which the offender previously has been convicted * * *, whether prosecuted together or separately.

{¶42} (iii) The offense * * * of which the offender currently is convicted * * * is * * * any felony of the second degree that is an offense of violence and *the trier of fact finds that the offense involved * * * a threat to cause serious physical harm to a person * * *.* (Emphasis added.)

{¶43} Appellant concedes the record supports the first and second required findings for an RVO specification. Thus, he concedes that under the first required RVO finding, he was convicted of an RVO specification in this case. He also concedes that under the second required RVO finding, he was convicted of three counts of aggravated robbery in one case in Cuyahoga County in 2009; that he was convicted of aggravated robbery in an unrelated case in that county that same year; that he was sentenced concurrently in both cases to five years in prison; that he was released from prison in 2014; and that, within one year of his release, while he was on post-release control, he committed the instant bank robbery.

{¶44} The only RVO finding appellant argues was not supported by the record is the third finding, i.e., that the current robbery involved a threat to cause serious physical harm to a person. In response, the state argues the note appellant presented to the teller at the time of the robbery supported the court's finding that appellant threatened to cause her serious physical harm.

{¶45} "While a plea of guilty is a complete admission of the defendant's guilt, a plea of no contest is not an admission of guilt, but is an admission of the truth of the facts alleged in the indictment * * *. Crim.R. 11(B)(1) and (2)." *State ex rel. Stern v. Mascio*, 75 Ohio St.3d 422, 423 (1996).

11

{¶46} The requirements regarding no contest pleas in misdemeanor cases are different from those in felony cases. While the trial court is required under R.C. 2937.07 to obtain an explanation of circumstances before accepting a no contest plea to a misdemeanor, Crim.R. 11 does not require an explanation of circumstances before the court accepts a no contest plea to a felony. *State v. Williams*, 8th Dist. Cuyahoga No. 103762, 2016-Ohio-7777, ¶5, citing *State v. Magnone*, 2d Dist. Clark No.2015-CA-94, 2016-Ohio-7100, ¶45. However, while not required, the trial court can ask for an explanation of circumstances before accepting a no contest plea to a felony. *Id.* at ¶8.

{¶47} The Supreme Court of Ohio has stated that "where the indictment * * * contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense." *State v. Bird*, 81 Ohio St.3d 582, 584 (1998). An exception to this rule provides that when the trial court asks for an explanation of circumstances and that explanation negates the existence of an element of the offense, the trial court errs in finding the defendant guilty. *Williams, supra*.

{¶48} Further, "by pleading no contest to the indictment," a defendant "is foreclosed from challenging the factual merits of the underlying charge." *Bird, supra*. The essence of the no contest plea is that the defendant cannot be heard in defense. *Mascio, supra*, at 424. "[T]he defendant who pleads no contest waives the right to present additional affirmative factual allegations to prove that he is not guilty of the charged offense." *Id.*

{¶49} Here, during the plea hearing, appellant told the court it was his intention to plead no contest to *both the charge and the specification*. He also said he was

12

admitting the truth of the facts set forth in the indictment and the facts to be presented by the prosecutor.

{¶50} After explaining the required findings for the RVO specification regarding appellant's prior and present convictions, the trial court advised appellant that there would also have to be a finding that he threatened to cause serious physical harm to the victim.

{¶51} Appellant said that he was voluntarily pleading no contest to robbery along with the RVO specification associated with that count and that he was asking the court to accept his plea.

{¶52} The court then asked the prosecutor for an explanation of circumstances. The prosecutor said that if the case had gone to trial, the evidence would have revealed that:

{¶53} On April 17, 2015, shortly before 1:00 P.M., the Buckeye State Credit Union * * * was robbed.

{¶54} The individual walked into the bank and handed a note to the teller. The note said,

{¶55} "1. Stay Calm.  Don't raise your hands up or draw any attention.

{¶56} 2. I have a Loaded Gun on me.

{¶57} 3.  Place All bills from the Drawer Onto the Counter.

{¶58} 4. I really don't want to hurt you, so Please:

{¶59} No Die (sic.) Packs, No Silent Alarms, No Bait Money, No GPS."

{¶60} In response to being provided that note the teller handed the individual * * * $1,972.

{¶61} The individual then left [the] bank.  Upon arrival of Lake County Deputy Sheriffs, the employees describe[d] the suspect as being six foot tall, weighing approximately 200 pounds, being a black male with a beard * * *.

13

{¶62} The deputies * * * sent out a be-on-the-look-out broadcast. Several police officers, including Deputy * * * Leonello and Patrolman * * * Krejsa * * * set up on I-90 westbound. Deputy Leonello observed a [vehicle] fitting the description being driven by a black male pass[ ] him. About the same time Officer Krejsa also noted the vehicle.

{¶63} The two of them then proceeded to conduct a traffic stop. The driver of the vehicle was identified as Dawud A. Wilson. And upon stopping the vehicle the contents inside the vehicle in plain view were consistent with the information taken from the scene. In plain view was a large amount of currency * * *. The currency itself was bait money provided by the bank.

{¶64} In addition, a * * * coat contained $1,972 * * * in the * * * pocket. * * * They also found a * * * bag, which contained a typed robbery demand [note] * * * on the floor of the vehicle * * *[.]

{¶65} The following colloquy then took place between the court and appellant:

{¶66} THE COURT: [T]he Prosecutor has summarized what the evidence was going to show in your particular case. You heard that, correct?

{¶67} THE DEFENDANT: Yes, sir.

{¶68} THE COURT: * * * Are you * * * admitting the truth of the facts that the Prosecutor has set forth here in open Court today? * * *

{¶69} THE DEFENDANT: Yes.

{¶70} * * *

{¶71} THE COURT: [U]nderstanding the rights that you have, hearing now what the facts are and having reviewed the facts in the indictment, are you still admitting the truth of the facts by pleading no contest here today?

{¶72} THE DEFENDANT: Yes, sir.

{¶73} THE COURT: * * * [With respect to the RVO specification,] the court finds that * * * the Defendant has previously been convicted of offenses of violence, as noted in the repeat violent offender specification, also that the crime[ ] to which he is pleading is, in fact, an offense of violence by statute. Three counts of aggravated robbery, felonies of the first degree, October 16th, 2009. Also aggravated robbery, a felony of the first degree[,] October 16th of

14

2009, both in the Cuyahoga County Court of Common Pleas. The Court also makes the finding that the Defendant did, in the commission of the crime here today, threaten to cause serious physical harm to a person, thereby triggering the RVO.

{¶74} All of that being said, the Court needs to have the Defendant review once again the written plea of no contest form, make sure you still want to enter that plea based upon the findings here today. * * * Sign the document only if you still want to plead no contest.

{¶75} [DEFENSE COUNSEL]: Your Honor, Mr. Wilson has signed the written plea of no contest and I have signed it as well confirming that he has signed it. And I have discussed it and reviewed it with Mr. Wilson prior to Court as well.

{¶76} * * *

{¶77} THE COURT: * * * Finding the pleas to have been knowingly, intelligently, and voluntarily made, I will accept the no contest pleas that have both been made orally and in writing here in open Court today. With the findings and the reasons previously stated by the Court, I will find the Defendant guilty of the crime of robbery in violation of 2911.02(A)(2) of the Revised Code, a felony of the second degree as set forth in Count 2 of the indictment. I will also find him guilty of the repeat violent offender specification associated with Count 2 of the indictment as well.

{¶78} A "threat" intimidates or causes the victim to be afraid. *Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71 (2d Dist.1995). Further, a threat may be express or implied. *State v. Terzo*, 12th Dist. Butler No. 2002-08-194, 2003-Ohio-5983, ¶18.

{¶79} As indicated above, the robbery note appellant gave the teller said, "I have a Loaded Gun on me." The word "loaded" is in bold print, highlighted to stand out from the other type. Further, the note said, "I really don't want to hurt you, so Please: No Die (sic) Packs, No Silent Alarms, No Bait Money, No GPS." By pleading no contest and admitting he gave the teller a note saying he had a loaded gun and he would hurt her with it if necessary, appellant cannot dispute the note contained a threat that he would cause the teller serious physical harm if she did not comply with his demands.

15

**{¶80}** Appellant argues the note was not a threat because it said he did not want to hurt the teller. However, considering this phrase in context, he said that if she did not obey his instructions, he would hurt her.

**{¶81}** Further, appellant argues there was no evidence of a threat to cause serious physical harm because no evidence was presented that, during the robbery, he had a gun on him. However, the statement in appellant's note that "I have a Loaded Gun on me" was direct evidence he had a gun.

**{¶82}** Based on appellant's no contest plea and his stipulation to the indictment and the explanation of circumstances, the record supports the trial court's finding that appellant threatened to cause serious physical harm.

**{¶83}** Appellant also makes an Apprendi argument, arguing the trial court erred in sentencing him on the RVO specification after making a factual finding that a jury did not find and he did not admit, in violation of his right to a jury trial, pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856. Appellant is again referring to the court's finding that he threatened to cause serious physical harm. However, appellant's argument lacks merit because he waived his right to a jury trial on this issue and he admitted all facts necessary to allow the court to find he was a repeat violent offender.

**{¶84}** Appellant concedes that he failed to raise an Apprendi argument in the trial court; that he thus waived it; and that this court is limited to reviewing this issue for plain error.

**{¶85}** In *State v. Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, the trial court designated the defendant as a repeat violent offender based on his stipulation that he had a prior conviction for felonious assault with a specification that he caused "physical harm" (as required by the former version of the RVO statute). Hunter argued he had a

16

right to have the jury make those findings. However, the Court in *Hunter* held that the court did not violate his right to a jury trial because: (1) Hunter waived his right to a jury trial, and (2) he stipulated to the facts necessary for the RVO specification.

{¶86} First, with respect to waiver, Hunter's case was tried to a jury, but he waived his right to a jury trial *on the RVO specification.* After the jury found appellant guilty of felonious assault, the court held a bench trial on the specification. The Supreme Court held that because Hunter chose to submit the RVO determination to the trial court, he waived any right he had to have the jury make this finding. *Id.* at ¶31.

{¶87} Here, in pleading no contest to the specification, appellant waived his right to a jury on that issue and essentially asked the court to determine the specification based on his admission of the truth of the facts alleged in the indictment and contained in the prosecutor's statement of facts.

{¶88} Second, the *Hunter* Court held that since Hunter admitted all facts necessary for the court to designate him as a repeat violent offender, including that he caused physical harm to the victim, the trial court did not need to conduct fact-finding and no Sixth Amendment violation occurred. *Id.* at ¶33.

{¶89} The dissent maintains that, although appellant admitted the truth of the prosecutor's statement of facts regarding his current conviction, the trial court should not have accepted those facts in enhancing his sentence. While the Supreme Court in *Hunter* upheld the trial court's acceptance of the defendant's stipulation to the facts of his *prior conviction*, the dissent suggests *Hunter* does not apply here because appellant stipulated to the facts of his *current* conviction. However, nothing in *Hunter* suggests a trial court may not accept a defendant's stipulation to the facts of his current conviction. It is important to note that, while *judicial fact-finding* for sentence enhancement is

17

expressly limited to the facts of a prior conviction, *stipulations* (which also obviate the need for a jury) are not. *Id.* at ¶29.

**{¶90}** This court, in *State v. Payne,* 11th Dist. Lake No. 2004-L-118, 2005-Ohio-7043, held that in order to be constitutionally permissible under *Apprendi*, "*any fact, other than a prior conviction, must be determined by a jury or admitted by the appellant.*" (Emphasis added.) *Id.* at ¶114. Thus, any fact other than a prior conviction that is found by a jury *or admitted by the defendant* complies with *Apprendi*, regardless of whether it relates to a prior or current conviction.

**{¶91}** In *Payne*, this court said it was the trial court's findings as to the seriousness of the defendant's *current conviction* (per the former statute) that enhanced his sentence under the RVO specification, and these findings "should have been decided by a jury (if appellant did not admit them, which he did not)[.]" *Id.* at ¶116. Thus, this court implied that if a defendant admits the necessary findings regarding his current conviction, those findings need not be made by a jury.

**{¶92}** "'A stipulation, once entered into and * * * accepted by the court, is binding upon the parties and is a fact deemed adjudicated * * *.'" *State v. Carr*, 2d Dist. Montgomery No. 23826, 2010-Ohio-6470, ¶12, quoting 89 Ohio Jurisprudence 3d, Trial, Sec. 61. Thus, for RVO purposes, it makes no sense to draw a distinction between stipulations regarding the facts of a prior conviction and the facts of a current conviction. Once the defendant admits the facts recited by the prosecutor supporting a conviction, either prior or current, those facts are no longer in dispute. As the Court in *Hunter* said, where the defendant stipulates "to all the facts necessary for the trial court to designate him as a repeat violent offender," "the trial court ha[s] no need to conduct fact-finding * *

18

* and no Sixth Amendment violation occurred * * *." *Hunter* at ¶32-33. That is exactly what happened here.

{¶93} The dissent's reliance on this court's decision in *Payne, supra,* in which this court held that the trial court violated *Apprendi*, is misplaced as the facts in *Payne* are distinguishable. Payne's case was tried by a jury, which found him guilty of the underlying offenses. At sentencing, the court enhanced the defendant's sentence based on the court's findings - from the testimony presented - that Payne caused physical harm in his prior conviction and serious physical harm in his current conviction, per the former RVO statute. *Id.* at ¶107-108. Payne did not waive the jury as to the specification and *did not stipulate to the necessary findings,* and this court properly held the trial court's fact-finding regarding his prior and current convictions violated *Apprendi*. *Payne* at ¶114.

{¶94} In contrast, here, appellant pled no contest to robbery *and the specification, thus waiving the jury as to both,* and *admitted all facts necessary for the RVO specification* as recited in the prosecutor's statement of facts. Before pleading, appellant told the court he would be admitting (1) the facts alleged in the indictment and (2) *the facts to be presented by the prosecutor*. Before hearing from the prosecutor, the court advised appellant, and he said he understood, that "there needs to be a finding, which would be today, that you threatened serious physical harm to the victim * * *." After the court notified him of this element, appellant said he was (1) voluntarily pleading no contest to robbery and the specification and (2) *asking the court to accept his plea.*

{¶95} Then, during the prosecutor's statement of facts, he said appellant handed the robbery note to the teller. In that note, appellant informed her that he had a loaded gun on him and indicated he would hurt her with it unless she followed his demands.

19

*After hearing the facts as outlined by the prosecutor, appellant admitted they were true*. He thus essentially admitted he threatened to cause the teller serious physical harm. Appellant again asked the court to accept his plea. The court then found that appellant threatened to inflict serious physical harm on the teller, thus triggering the RVO statute.

{¶96} After making this finding, the court instructed appellant to again review the plea form to *make sure he still wanted to plead* based on the court's findings and *to only sign the form if that was still his wish*. After again reviewing the form with his attorney, appellant signed it, and the court found him guilty of robbery and the RVO specification.

{¶97} Since appellant waived his right to have the jury try the specification and admitted all facts necessary to enhance his sentence as an RVO, the trial court did not commit plain error in sentencing him.

{¶98} For his third and final assigned error, appellant alleges:

{¶99} "The trial court erred by sentencing the defendant-appellant to a maximum, eight-year prison sentence for robbery."

{¶100} Appellant concedes the trial court was required by R.C. 2929.14(B)(2)(b) to impose the longest possible prison term for his robbery offense (eight years) because the court also imposed a prison term for the RVO specification. He also concedes the trial court was not required to make any particular findings before imposing a maximum sentence and that, in imposing such sentence, the court was only required to consider the sentencing factors in R.C. 2929.11 and R.C. 2929.12. However, he argues that because, in his view, the court's finding that he threatened to cause serious physical harm (as to the RVO specification) was contrary to law, the eight-year term for robbery should also be vacated due to the court's alleged errors in imposing that sentence.

20

{¶101} First, appellant argues the court erred in finding that the teller suffered serious psychological harm per R.C. 2929.12(B)(2) because, in his view, that finding was not supported by the record. However, in considering this seriousness factor, the trial court stated:

> {¶102} There was also serious psychological harm caused to the teller. Certainly, even though I don't have a written victim impact statement, I can imagine receiving the note * * * and the fear, the terror, [and] the concern for one's life and * * * well-being * * *. So I do find that there was serious psychological harm.

{¶103} The trial court thus found that serious psychological harm was a natural consequence of appellant giving the teller the note during the robbery.

{¶104} Further, appellant's own words at sentencing helped prove the psychological harm his actions caused the teller when he stated: "I do realize that my actions have caused a negative impact on [the tellers'] lives * * *."

{¶105} Second, appellant argues that the trial court erred in finding that no less seriousness factors were present because appellant said at sentencing that he did not intend to harm the teller. Appellant argues this comment supported the less serious factor in R.C. 2929.12(C)(3) (that the offender did not expect to cause physical harm). However, "[a] trial court is not required to give any particular weight * * * to a given set of circumstances; it is merely required to consider the statutory factors * * *." *State v. Delmanzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶23. Thus, despite appellant's comment at sentencing, the court was not required to give it any weight. The trial court was able to observe appellant while testifying and, in finding that no less serious factors were present, the court, as the trier of fact, obviously found appellant's comment lacked credibility.

21

{¶106} Based on our review of the record, the court considered the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness factors in R.C. 2929.11 in imposing appellant's sentence. We therefore hold appellant's maximum sentence for robbery was not contrary to law.

{¶107} For the reasons stated in this opinion, the assignments of error are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs,

TIMOTHY P. CANNON, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

TIMOTHY P. CANNON, J., concurring in part and dissenting in part.

{¶108} I dissent from the majority's opinion as it relates to appellant's second assignment of error, which asserts the trial court erred in its imposition of sentence on the repeat violent offender specification. The assignment of error has merit.

{¶109} When a repeat violent offender specification is properly alleged in an indictment, it is the trial court's duty to initially determine the issue of whether an offender should be designated a repeat violent offender ("RVO"). R.C. 2941.149(B). In *State v. Hunter*, the case cited by the majority in support of its holding, the defendant waived his right to a jury trial regarding the RVO specification to an indicted charge of felonious assault. 123 Ohio St.3d 164, 2009-Ohio-4147, ¶5. The specification was bifurcated from the felonious assault charge, and the specification was tried to the

22

bench. *Id.* At that time, former R.C. 2929.01(DD) identified the findings the trial court was required to make when determining whether an offender should be designated an RVO; those findings related to the nature of the offender's previous convictions *and* the nature of the current offense. *See id.* at ¶12-20.

{¶110} The defendant in *Hunter* stipulated that, during the commission of his *previous* felonious assault conviction, he caused physical harm to the victim and had served a prison sentence on that previous conviction—factual findings required under former R.C. 2929.01(DD)(2)(a). *Id.* at ¶32. The trial court accepted this stipulation and designated the defendant an RVO. *Id.* at ¶29. On appeal, the defendant challenged his RVO designation on the basis that it violated his Sixth Amendment right to have a jury make the findings in former R.C. 2929.01(DD)(2)(a). *Id.*

{¶111} The Ohio Supreme Court held: "When designating an offender as a 'repeat violent offender' pursuant to former R.C. 2929.01(DD), a trial court does not violate the Sixth Amendment by considering relevant information about the offender's *prior conviction* that is part of the judicial record." *Id.* at paragraph two of the syllabus (emphasis added), following *Shepard v. United States*, 544 U.S. 13 (2005). The Supreme Court's entire *Hunter* opinion related to the appropriateness of judicial factfinding only as it related to judicial records of *prior* convictions. It supported its holding with the following analysis: "Significantly, the Sixth Amendment does not limit a sentencing court's consideration to the *existence* of a prior conviction. On the contrary, the United States Supreme Court has held that courts may consider the information contained in court documents that are related to the prior conviction." *Id.* at ¶36 (emphasis sic). "[T]he Sixth Amendment does not bar judicial consideration of a defendant's *prior* convictions at sentencing because "'recidivism * * * is a traditional, if

23

not the most traditional, basis for a sentencing court's increasing an offender's sentence.'"'" *Id.* at ¶35 (emphasis added), quoting *Apprendi v. New Jersey*, 530 U.S. 466, 488 (2000), quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998).

{¶112} The majority opinion erroneously applies the holding in *Hunter* to the case sub judice, the facts of which are inapposite. Appellant herein challenges the trial court's factual finding of "serious physical harm" as it relates to appellant's *current* offense, not his prior convictions, and as it relates to his RVO sentencing enhancement, not his designation as an RVO.

{¶113} Former R.C. 2929.01(DD) has been rewritten and is now located at R.C. 2929.01(CC). The findings the trial court must make in order to designate an offender an RVO no longer include any finding related to "physical harm" or "serious physical harm."

{¶114} A finding of "serious physical harm" now becomes necessary only *after* the trial court has designated the offender an RVO and the matter is before the court for imposition of an enhanced penalty due to that designation. R.C. 2929.14(B)(2)(b). Even then, a finding of "serious physical harm" is only required when the "offense or offenses of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the second degree that is an offense of violence[.]" R.C. 2929.14(B)(2)(b)(iii). And, even then, only if "*the trier of fact finds* that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person." *Id.*

{¶115} "Both the United States and Ohio Supreme Courts have explained that the historical role of the jury in finding facts necessary to convict or increase a sentence

24

range is protected by the Sixth Amendment." *State v. Oller*, 10th Dist. Franklin No. 16AP-429, 2017-Ohio-814, ¶45, citing *Alleyne v. United States*, 570 U.S. 99 (2013); *Oregon v. Ice*, 555 U.S. 160 (2009); *United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *Ring v. Arizona*, 536 U.S. 584 (2002); *Apprendi* and *Hunter*, *supra*; and *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856.

{¶116} The factfinding relative to the "serious physical harm" component of R.C. 2929.14(B)(2)(b) therefore violates the Sixth Amendment if made by the trial court, as opposed to the jury. *See State v. Bishop*, 5th Dist. Stark No. 2014CA00190, 2015-Ohio-3023, ¶19-21. In reaching this conclusion, the Fifth District followed the holding in *Smith v. Petkovich*, 562 F.Supp.2d 912, 922 (N.D. Ohio 2008), which explains:

> The holding in *Apprendi* established that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' 530 U.S. at 489. [Petitioner] received the statutory maximum of eight years for felonious assault. That the trial court then resorted to judicial fact-finding to establish a separate additional sentence of nine years predicated on the Petitioner's repeat offender status and the assignment of the eight year statutory maximum for felonious assault, clearly marks the additional sentence as unconstitutional under *Apprendi*. Accordingly, [Petitioner's] independent nine-year sentence is contrary to clearly established federal law and he is entitled to habeas relief on the merits.

{¶117} Of course, as the majority notes, "'nothing prevents a defendant from waiving his *Apprendi* rights [to a jury determination of every element of the charge].'" *Hunter*, *supra*, at ¶30, quoting *Blakely*, *supra*, at 310. "[W]hile the Sixth Amendment generally prohibits judicial fact-finding, there is an 'exception for prior criminal convictions *and the defendant's consent to judicial fact-finding*.'" *Id.* (emphasis sic), quoting *Foster*, *supra*, at ¶7.

25

**{¶118}** Here, however, appellant's no contest plea should not be construed as his consent to judicial factfinding on this issue. For the following reasons, the majority errs in holding otherwise.

**{¶119}** A no contest plea admits only the truth of the facts alleged in the indictment. Crim.R. 11(B)(2). Appellant pled no contest to robbery, a second-degree felony of which "serious physical harm" is not an element. The indictment did not allege "serious physical harm" in the robbery count or in the attached RVO specification. Therefore, not even a jury would have been permitted to find that appellant threatened "serious physical harm" to the victim under that count. As such, the trial court violated appellant's right to procedural due process. *See, e.g., Russell v. United States*, 369 U.S. 749, 763-764 (citations omitted).

**{¶120}** The error in this case was further compounded by the trial court's decision to act as the trier of fact in order to make that factual finding, which was neither alleged in the indictment nor admitted to by appellant, for purposes of penalty enhancement. This amounted to a violation of appellant's Sixth Amendment rights.

**{¶121}** The trial court was only permitted to enhance appellant's sentence relative to the RVO specification if a *trier of fact* found appellant's actions threatened, attempted, or resulted in "serious physical harm" to the victim. *See State v. Brown*, 10th Dist. Franklin Nos. 10AP-836 & 10AP-845, 2011-Ohio-3159, ¶23, fn. 2 (holding the trial court properly enhanced the defendant's sentence for second-degree felony robbery *only* because the indictment for the attached RVO specification alleged "serious physical harm" and the jury instructions for the robbery count included a finding of "serious physical harm"); *State v. Davis*, 7th Dist. Mahoning No. 08 MA 152, 2009-Ohio-5079, ¶36 (holding that, although the defendant may have in fact threatened to cause serious

26

physical harm to the robbery victims, only the trier of fact was permitted to make such a finding for purposes of penalty enhancement). A trial court, however, does not try facts at a plea hearing; it simply determines whether there is a sufficient factual basis to support a plea to the indicted charge.

{¶122} Contrary to the majority's assertion, this holding is further supported by this court's opinion in *State v. Payne*, 11th Dist. Lake No. 2004-L-118, 2005-Ohio-7043. Under the RVO statute at that time, the trial court was required, inter alia, to make an independent, judicial finding that "serious physical harm" occurred, or had been attempted, in the current conviction. *Id.* at ¶106, citing former R.C. 2929.01(DD). This court held that the trial court's finding of "serious physical harm," as it related to the current conviction, went "beyond what is constitutionally permissible under *Apprendi* and *Blakely*; i.e., any fact, *other than a prior conviction*, must be determined by a jury or admitted by the appellant." *Id.* at ¶114 (emphasis sic). We held the defendant's constitutional rights, as set forth in *Apprendi*, *Blakely*, and *Booker*, were violated even though, at the time, the finding of "serious physical harm" was required when initially designating a defendant an RVO. *Id.* at ¶113. A constitutional violation is even more apparent when, as here, the trial court acts as the trier of fact under the current statutory scheme, because this finding must now be applied at the sentencing phase to enhance the penalty of a defendant who has already been designated an RVO. *See*, *e.g.*, *State v. Payne*, 11th Dist. Lake No. 2006-L-272, 2007-Ohio-6740, ¶76, citing *Payne*, 2005-Ohio-7043, at ¶104 (Grendell, J., concurring and dissenting) (recognizing the RVO designation and RVO sentence as distinct issues: "[T]he factfinding required before the imposition of additional penalties is separate and distinct from the factfinding required to determine an offender's status as a repeat violent offender. An offender may be

determined to be a repeat violent offender without suffering the imposition of additional penalties."); *see also id.* at ¶63-64 (Cannon, J., concurring) (recognizing the distinction between judicial factfinding for sentencing purposes as opposed to judicial factfinding for designation purposes, the latter of which is now completely "capable of determination by public record of a prior conviction").

{¶123} At no time did appellant ever admit to threatening "serious physical harm" nor was it alleged in the indictment to which he pled no contest. To suggest there was an admission or stipulation of "serious physical harm" is a complete distortion of the record. Even the trial court understood that appellant had neither admitted nor stipulated to "serious physical harm," which is why the court stated it was required to make this finding "as the trier of fact." Again, a trial court does not *try* facts at a plea or sentencing hearing. Nevertheless, the court stated: "And again there needs to be a finding, which would be today, that you threatened serious physical harm to the victim in this particular case as well, or inflicted physical harm. Having sat through some earlier hearings, I think it was the threat of physical harm that's the real issue." It is also noteworthy that the trial court, in its initial statement of findings, concluded: "The Court specifically finds * * * [appellant] did threaten to inflict *physical harm* on the employee of Buckeye State Credit Union by virtue of the written letter[.]" However, the court subsequently stated: "The Court also makes the finding that the Defendant did, in the commission of the crime here today, threaten to cause *serious physical harm* to a person, thereby triggering the RVO."

{¶124} Appellant did admit to certain facts as presented by the prosecutor, e.g., that he handed a note to the teller indicating he was carrying a firearm. The majority is suggesting that because those facts may be sufficient to support a finding of "serious

28

physical harm," the trial court was permitted to act as the trier of fact and enhance appellant's sentence accordingly. On that basis, the trial court could find appellant guilty of anything, regardless of the indictment or plea, based on a prosecutor's statement. Further, a statement of facts by a prosecutor in the face of a no contest plea does not constitute evidence. *See State v. Magnone*, 2d Dist. Clark No. 2015-CA-94, 2016-Ohio-7100, ¶46, citing *State v. Green*, 81 Ohio St.3d 100, 104 (1998). Thus, although appellant admitted to the facts as presented by the prosecutor at his plea hearing, that does not equate to an admission or stipulation to the characterization of those facts as threatening "serious physical harm." The trial court was not permitted to find that those facts equated to "serious physical harm" in order to enhance appellant's sentence. *See Apprendi*, *supra*, and its progeny.

{¶125} The majority opinion completely mischaracterizes and distorts what is stated in this dissent. The distinction between (a) factual findings that were properly made in a case already concluded, of which a future court may take judicial notice, and (b) factual findings that must be made by a trier of fact in a case still pending before the court, has been explained herein and cannot be made more clear.

{¶126} To summarize, there are two serious flaws in this case. First, appellant never, at any time, admitted or stipulated to threatening "serious physical harm." The prosecutor never stated that appellant threatened "serious physical harm." Nevertheless, the trial court proceeded to make a factual finding based on the facts presented by the prosecutor. Second, that finding was made even though it was not alleged in the indicted count to which appellant pled no contest.

{¶127} Appellant's two-year sentence for the RVO specification should be vacated, and this matter should be remanded for resentencing.

29